UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-20776-RAR

CRAZY FORTS INC.,

        Plaintiff,
v.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.
_____/

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION AS TO CERTAIN DEFENDANTS

**THIS CAUSE** comes before the Court on Plaintiff CRAZY FORTS, INC.'s ("Crazy Forts") *Ex Parte* Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Motion"), [ECF No. 7], filed under 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a). Plaintiff alleges Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule "A" of the Complaint, infringe on Plaintiff's trademarks and promote and sell counterfeits of Plaintiff's branded goods through the operation of Internet based e-commerce stores under their seller identities. Among other requests, Plaintiff asks the Court to enjoin Defendants from producing or selling goods that infringe their trademarks and restrain funds in payment accounts associated with Defendants.

On March 3, 2023, the Court issued an Order, [ECF No. 11], entering a temporary restraining order and restraining the financial accounts used by Defendants ("TRO"). The TRO set a hearing on Plaintiff's Motion for Preliminary Injunction for March 13, 2023. The Court

continued the hearing three times to allow time for the Defendants to be served and to file a response to the Motion. [ECF Nos. 15, 29, and 78]. The Court held the preliminary injunction hearing on April 24, 2023.

Prior to the hearing on the Motion for Preliminary Injunction, Plaintiff filed Proofs of Service, [ECF Nos. 17, 18, 20, 25, 27, 28, 99], on all but 159 Defendants,[1] pursuant to the Court's Order Authorizing Alternate Service of Process, [ECF No. 10]. Plaintiff's Proofs of Service affirm that Plaintiff served process on certain Defendants identified on Schedule "A" by emailing these Defendants the text of the summons issued in this action and the link http://www.sriplaw.com/notice where the full text of the Complaint, exhibits thereto, Temporary Restraining Order, and the full text of all other documents filed in this action are available to view and download in compliance with this Court's Order on Alternate Service.

At the Preliminary Injunction Hearing, the Court inquired whether service had been made on all Defendants, and Plaintiff confirmed that service was made on certain Defendants identified on Schedule "A," except for 159 Alibaba and Aliexpress Defendants.[2] The Court also heard from Defendant No. 193 Tiny Land, who informed the Court at the hearing that the TRO has been dissolved as to Defendant 193. [ECF No. 88]. Thus, Plaintiff requests that the subject preliminary injunction be entered against Served Defendants that have not been dismissed from this case.[3]

---

[1] The 159 unserved Defendants are comprised of Alibaba and AliExpress Defendants. Alibaba and AliExpress have failed to comply with the TRO and produce any information required by the TRO so Plaintiff can serve these Defendants. *See* Order to Show Cause [ECF No. 108].

[2] Plaintiff filed a Motion for an Order to Show Cause Why Alibaba.com, Aliexpress.com, Ant Financial Services and Alipay Should Not Be Held In Contempt Of This Court's Temporary Restraining Order, [ECF No. 103], and requested that the TRO be extended as to those Alibaba/Aliexpress Defendants on which service had not yet been made. The Court granted this Motion on April 25, 2023. [ECF No. 108].

[3] In addition to Defendant No. 193 Tiny Land, Orders of Dismissal of Defendants that are no longer subject to the TRO or this Motion for Preliminary Injunction are filed at ECF Nos. 22, 24, 49, 56, 58, 59, 61, 66, 67, 72, 73, 77, 82, 83, 89, 92, 94, 96, and 98.

The Court has carefully considered the Motion and pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and this Court's inherent authority, Plaintiff's Motion, [ECF No. 7], is **GRANTED** against Defendants identified in Schedule "A" of the Complaint as Defendant Nos. 144, 147, 148, 149, 151–54, 156–58, 161–63, 165, 166, 168, 169, 172, 173, 175, 179, 181, 183, 184, 186, 188–91, 194, 197–221, 224–27, 231–34, 239, 240, 242, 244–46, 248, 251, 252, 254, 255, 257, 258, 260–63, 265–70, 272–82, 285–91, 293–300, 302, 303, 306–07, 309, 310, 313–15, 317, 320, 323, 325, 326, 328, 330–35, 337, 339, 342–48, 352, 356–62, 366–371, 374–78, 381, 383, 385, 388, 390–94, 397, 399, 400–03, 405, 406, 408–13, 419–33, 435–40 ("Served Defendants"), as set forth herein.

## **BACKGROUND**

Plaintiff raises five claims for relief: (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin under 15 U.S.C. § 1125(a); (3) unfair competition under Florida common law; (4) trademark infringement under Florida common law; and (5) copyright infringement in violation of 17 U.S.C. § 501. *See* Compl. [ECF No. 1] ¶¶ 125–66. Plaintiff alleges Defendants are promoting, advertising, distributing, offering for sale, and selling counterfeit and infringing versions of Plaintiff's branded products within the Southern District of Florida through Internet based e-commerce stores operating under the E-commerce Store Names identified on Schedule "A." *See generally id.*

Plaintiff alleges Defendants' unlawful activities have caused and will continue to cause irreparable injury because Defendants have (1) deprived Plaintiff of its right to determine the manner in which its trademarks are presented to the public through merchandising; (2) defrauded

the public into thinking Defendants' goods are goods authorized by Plaintiff; (3) deceived the public as to Plaintiff's association with Defendants' goods and the e-commerce stores marketing and selling the goods; and (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill as well as the commercial value of Plaintiff's trademarks.  *See generally id*.

## LEGAL STANDARD

Plaintiff has filed claims under the Lanham Act and Florida common law.  *See generally* Am. Compl.  The Lanham Act provides that the Court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."  15 U.S.C. § 1116(a).  Injunctive relief is also available for a violation of 15 U.S.C. § 1114(1)(a).  *See id.* § 1116(d)(1)(A).  To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest."  *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995).

## ANALYSIS

The Court determines that the temporary restraints previously granted in the TRO should remain in place through the pendency of this litigation and that issuing this Preliminary Injunction is warranted under Federal Rule of Civil Procedure 65.  Evidence submitted in support of this Motion and in support of Plaintiff's previously granted Motion for a Temporary Restraining Order establishes that Plaintiff has a likelihood of success on the merits, that Plaintiff will suffer

irreparable harm absent a preliminary injunction, and a balancing of the equities favors granting the injunction.

The Court concludes that Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing counterfeits, reproductions, or colorable imitations of the products using Plaintiff's federally registered CRAZY FORTS trademark and/or copyrighted images.

The potential harm to the Served Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products, if the injunction is not issued. The public interest favors issuance of the injunction to protect Plaintiff's intellectual property interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

Further, under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of Plaintiff's trademarks. *See Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). The Copyright Act also permits the recovery of Defendants' profits. *See* 17 U.S.C. § 504. Furthermore, the Copyright Act permits the entry of an injunction to restrain violations of those act and authorizes an order impounding infringing goods and articles. 17 U.S.C. §§ 502–503.

In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Served Defendants have violated federal trademark and copyright laws, Plaintiff has good reason to believe the Served Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless the restraint of those assets ordered in the TRO is continued.

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that pursuant to 15 U.S.C. § 1116, Federal Rule of Civil Procedure 65, 28 U.S.C. § 1651(a), and this Court's inherent authority, Plaintiff's Motion, [ECF No. 11], is **GRANTED**. A preliminary injunction is entered as follows:

## PRELIMINARY INJUNCTION

1. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the CRAZY FORTS Mark and/or copyrighted images, or any confusingly similar trademarks and/or images, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the CRAZY FORTS Mark and/or copyrighted images, or any confusingly similar trademarks and/or images; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the CRAZY FORTS Mark and/or copyrighted images, or any confusingly similar trademarks and/or images; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant.

2. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the CRAZY FORTS Mark and/or copyrighted images, or any confusingly similar trademarks and/or images, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs. This Order is limited to the Defendants' listings using the CRAZY FORTS Mark and/or copyrighted images, or any confusingly similar trademarks and/or images, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs, and does not apply to the Defendants' entire e-commerce stores.

3. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the CRAZY FORTS Mark and/or copyrighted images, or any confusingly similar trademarks and/or images, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs.

4. Each Defendant shall not transfer ownership of the Seller IDs during the pendency of this action, or until further order of the Court.

5. Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before the entry of this Order.

6. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Amazon.com, Inc., DHGate.com, eBay.com, Inc., ContextLogic Inc. Stripe, Inc., Etsy, Wish, and their related companies and affiliates shall, and, to the extent not already done, (i) immediately identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the Seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" to the Complaint, as well as any other accounts of the same customer(s); (ii) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) immediately divert those restrained funds to a holding account for the trust of the Court.

7. Upon receipt of notice of this Order, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, Amazon.com, Inc., DHGate.com, eBay.com, Inc., ContextLogic Inc. Stripe, Inc., Etsy, Wish, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to; (ii) the account transactions related to all funds

transmitted into the financial account(s) and sub-account(s) which have been restrained; (iii) the historical sales for the Defendants' listings that are alleged to infringe Plaintiff's trademarks and/or copyrighted images; and (iv) the true identities along with complete contact information including email addresses of all Defendants.

8. No funds restrained by this Order shall be transferred or surrendered by any Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon.com, Inc., DHGate.com, eBay.com, Inc., ContextLogic Inc. Stripe, Inc., Etsy, Wish, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

9. No Defendant whose funds are restrained by this Order may transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, Amazon.com, Inc., DHGate.com, eBay.com, Inc., ContextLogic Inc. Stripe, Inc., Etsy, Wish, and their related companies and affiliates restrained by this Order to any other financial institution, payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

10. Any Defendant or financial institution account holder subject to this Order may petition the Court to modify the asset restraint set out in this Order.

11. This Order shall apply to the Seller IDs, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting the CRAZY FORTS Mark and/or copyrighted images and unfairly competing with Plaintiff.

12. As a matter of law, this Order shall no longer apply to any Defendant or associated E-commerce Store Name dismissed from this action or as to which Plaintiff has withdrawn their request for a preliminary injunction.

13. This Order shall remain in effect until such further dates as set by the Court or stipulated by the parties.

14. The Court determines that the bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00) posted by Plaintiff as evidenced by the Notice of Filing Bond filed on March 15, 2023, [ECF No. 14], is sufficient and shall remain with the Court until a final disposition or until this Preliminary Injunction is dissolved or terminated.

**DONE AND ORDERED** in Miami, Florida, this 26th day of April, 2023.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**