UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-20776-RAR

**CRAZY FORTS INC**.,

          Plaintiff,

v.

**THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"**

          Defendants.

_____/

## ORDER ON MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

**THIS CAUSE** comes before the Court upon Plaintiff Crazy Forts, Inc.'s Motion for Entry of Final Default Judgment ("Motion"). [ECF No. 146]. A Clerk's Default, [ECF No. 128], was entered against Defendants on May 17, 2023, as Defaulting Defendants failed to appear, answer, or otherwise plead to the Complaint, [ECF No. 1], despite having been served. The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the following reasons, Plaintiff's Motion is **GRANTED**.

## I.     INTRODUCTION

Plaintiff sued Defendants for trademark counterfeiting and infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); copyright infringement under the Copyright Act, 17 U.S.C. §§ 106(1), (3), (4) & 501, and common law unfair competition; and common law trademark infringement. The Complaint alleges that Defendants are advertising, promoting, distributing, and performing Plaintiff's copyrighted works using counterfeits and confusingly similar imitations of Plaintiff's registered trademark within the Southern District of Florida by operating the Defendants' Internet

based e-commerce stores operating under each of the Seller IDs identified on Schedule "A" attached to Plaintiff's Motion for Entry of Final Default Judgment ("Seller IDs").

Plaintiff further asserts that Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff because Defendants have (1) deprived Plaintiff of its right to determine the manner in which its trademarks are presented to consumers; (2) defrauded consumers into thinking Defendants' illicit copies of Plaintiff's copyrighted works are authorized by Plaintiff; (3) deceived the public as to Plaintiff's sponsorship of and/or association with Defendants' counterfeit products and the websites on online storefronts through which such products are sold, offered for sale, marketed, advertised, and distributed; (4) wrongfully traded and capitalized on Plaintiff's reputation and goodwill and the commercial value of the Plaintiff's trademark; and (5) wrongfully damaged Plaintiff's ability to market its branded products and copyrighted works and products and educate consumers about its brand via the Internet in a free and fair marketplace.

In its Motion, Plaintiff seeks the entry of default final judgment against Defaulting Defendants[1] in an action alleging trademark counterfeiting and infringement, false designation of origin, common-law unfair competition, common law trademark infringement, and infringement of copyright. Plaintiff further requests that the Court (1) enjoin Defaulting Defendants' unlawful use of Plaintiff's trademark and copyrighted works; (2) award Plaintiff damages; and (3) instruct any third-party financial institutions in possession of any funds restrained or held on behalf of Defendants to transfer these funds to the Plaintiff in partial satisfaction of the award of damages.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "[A]

---

[1] Defaulting Defendants are the Individuals, Partnerships, or Unincorporated Associations identified on Schedule "A" of Plaintiff's Motion, and Schedule "A" of this Order.

defendant's default does not in itself warrant the court entering a default judgment." *DirecTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Granting a motion for default judgment is within the trial court's discretion.  *See Nishimatsu*, 515 F.2d at 1206.  Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleadings for the judgment to be entered.  *See id.*; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default …").  Upon a review of Plaintiff's submissions, it appears there is a sufficient basis in the pleadings for the default judgment to be entered in favor of Plaintiff.

## II.    FACTUAL BACKGROUND[2]

Plaintiff is the registered owner of the CRAZY FORTS trademark, U.S. Reg. No. 3,654,795 for toys, namely, a toy that uses spherical joints and plastic tube connectors for the construction and building of structures ("Crazy Forts Mark").  The Crazy Forts Mark is used in connection with the manufacture and distribution of Plaintiff's high-quality goods.  Compl. ¶ 26.  Moreover, Plaintiff is the owner of unregistered copyrights, including but not limited to those specifically identified in paragraph 43 of the Complaint and in Exhibit 2 thereto.

Defaulting Defendants, through the various Internet based e-commerce stores operating under each of the Seller IDs identified on Schedule "A" hereto have advertised, promoted, offered for distribution, distributed and/or publicly performed the Copyrighted Works under what Plaintiff has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the

---

[2]  The factual background is taken from Plaintiff's Complaint, [ECF No. 1], Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets and supporting evidentiary submissions, [ECF No. 7], and Plaintiff's Motion for Entry of Final Default Judgment and supporting evidentiary submissions, [ECF No. 146].

Crazy Forts Marks and Copyrighted Works.  *See* Declaration of Jessica Hansler in Support of Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Hansler Decl. in Support of TRO") ¶¶ 14–17.

Although each Defendant may not copy and infringe each of Plaintiff's trademarks for each category of services protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the Crazy Forts Marks and the Copyrighted Works at issue. *See* Hansler Decl. in Support of TRO ¶¶ 14–17; Exhibit 1 to Declaration of Joel B. Rothman.[3] Defaulting Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Crazy Forts Mark and/or reproduce or distribute the Copyrighted Works.  *See* Hansler Decl. in Support of TRO ¶ 14.

## III.   ANALYSIS

### A.   Claims

#### 1.   Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114) (Count I)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114.  To prevail on its trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must demonstrate that (1) it had prior rights to the mark at issue; and (2) Defendants adopted a mark or name that was the same, or confusingly similar to Plaintiff's trademark, such that consumers were likely to confuse the two.

---

[3] Evidence of each Defendants' infringement was attached as Exhibit 1 to the Declaration of Joel B. Rothman in Support of Plaintiff's Motion for Entry of Final Default Judgment.  Due to the size restriction for filing with CM/ECF, the exhibit to the declaration was filed separately to meet the maximum allowable size constraints.

*Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997)).

### 2. False Designation of Origin Pursuant to § 43(A) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II)

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin that is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' services by Plaintiff.  *See* 15 U.S.C. § 1125(a)(1).  The test for liability for false designation of origin under 15 U.S.C. § 1125(a) is the same as for a trademark counterfeiting and infringement claim – *i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992).

### 3. Common Law Unfair Competition and Trademark Infringement (Counts III and IV)

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's services or goods is also the determining factor in the analysis of unfair competition under Florida common law.  *Rolex Watch U.S.A., Inc. v. Forrester*, No. 83–8381, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in *John H. Harland, Inc. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)."); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975)

("As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition.").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.com, Inc.*, 336 F. Supp. 2d 1213, 1217–18 (S.D. Fla. 2004).

### 4.   Copyright Infringement (Count V)

To prevail on a claim of direct infringement of copyright pursuant to the Copyright Act, 17 U.S.C. §§ 106(1), (3), and (4), Plaintiff must "satisfy two requirements to present a prima facie case of direct copyright infringement: (1) they must show ownership of the allegedly infringed material, and (2) they must demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *see also Disney Enterprises, Inc. v. Hotfile Corp.*, No. 11-20427, 2013 WL 6336286, at *40 (S.D. Fla. Sept. 20, 2013).

### B.   Liability

The well-pled factual allegations in Plaintiff's Complaint properly allege the elements for each of the claims described above.  Moreover, the factual allegations in Plaintiff's Complaint have been substantiated by sworn declarations and other evidence and establish Defaulting Defendants' liability under each of the claims asserted in the Complaint.  Accordingly, default judgment pursuant to Federal Rule of Civil Procedure 55 is appropriate.

### C.   Injunctive Relief

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. *See* 15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy

of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)).  Moreover, even in a default judgment setting, injunctive relief is available.  *See, e.g.*, *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222–23.  Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further infringement absent an injunction. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease.  Therefore, plaintiff is entitled to permanent injunctive relief.").

Permanent injunctive relief is appropriate where a plaintiff demonstrates that (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392–93 (2006).  Plaintiff has carried its burden on each of the four factors.  Accordingly, permanent injunctive relief is appropriate.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); s*ee also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage Levi Strauss & Co.'s business reputation and might decrease its legitimate sales.").  Plaintiff's Complaint alleges that Defendants' unlawful actions have caused Plaintiff irreparable injury and will continue to do so if Defendants are not permanently enjoined.  *See* Compl. ¶¶ 119, 132, 145, 152, 158.  Further, the

Complaint alleges, the unauthorized Crazy Forts products sold, offered for sale, marketed, advertised, and distributed by Defendants are nearly identical to Plaintiff's genuine Crazy Forts products and consumers viewing Defendants' counterfeit products would actually confuse them for Plaintiff's genuine products. *See id.* ¶¶ 102, 116, 136. The Complaint states, "[t]he effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Counterfeit Goods are genuine goods originating from, associated with, or approved by Plaintiff." *Id.* ¶ 37.

Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of what appears to be its Crazy Forts products in the marketplace. An award of monetary damages alone will not cure the injury to Plaintiff's reputation and goodwill that will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, Plaintiff faces hardship from loss of sales and its inability to control its reputation in the marketplace. By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiff's trademarks and copyrights, which are illegal acts.

Finally, the public interest supports the issuance of a permanent injunction against Defaulting Defendants to prevent consumers from being misled by Defendants' counterfeit products. *See Nike, Inc. v. Leslie*, No. 85–960, 1985 WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g.*, *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to

the necessities of the particular case." (citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

Here, Defaulting Defendants have created an Internet-based infringement scheme in which they are profiting from their deliberate misappropriation of Plaintiff's rights. Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defaulting Defendants are conducting their unlawful activities.

### D. Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of products, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff has elected to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to determine the amount of statutory damages. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). An award of statutory damages is appropriate despite a Plaintiff's inability to prove actual damages caused by a defendant's infringement. *Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809, 2014 WL 1652044, at *7 (S.D. Fla. Apr. 23, 2014) (citing *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff

in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.")); *Playboy Enter., Inc. v. Universal Tel-A-Talk, Inc.*, No. CIV.A. 96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits).  Indeed, Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain.  *See, e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure").  This case is no exception.

This Court may award statutory damages "without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed."  *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007).  Although the Court is permitted to conduct a hearing on a default judgment regarding damages pursuant to Fed. R. Civ. P. 55(b)(2)(B), an evidentiary hearing is not necessary where there is sufficient evidence on the record to support the request for damages.  *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing).

Here, the allegations in the Complaint, which are taken as true, establish Defaulting Defendants intentionally copied the Crazy Forts Mark for the purpose of deriving the benefit of Plaintiff's world-famous reputation.  As such, the Lanham Act permits the Court to award up to

$2,000,000.00 per infringing mark on each type of service as statutory damages to ensure that Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defaulting Defendant sold, promoted, distributed, advertised, and/or offered for sale products bearing marks which were in fact counterfeits of at least one of the Crazy Forts Mark.  Based on the above considerations, Plaintiff suggests the Court award statutory damages of $10,000.00 against each Defaulting Defendant. The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish Defaulting Defendants, all stated goals of 15 U.S.C. § 1117(c).  The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1117(c) and is just.

### E.  Damages for False Designation of Origin

Plaintiff's Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (Count II).  *See* 15 U.S.C. § 1125(a).  As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c).  Accordingly, judgment on Count II is limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### F.  Damages for Common Law Unfair Competition and Trademark Infringement

Plaintiff's Complaint further sets forth a cause of action under Florida's common law of unfair competition (Count III) and trademark infringement (Count IV).  Judgment on Count III and Count IV are also limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.[4]

---

[4] Plaintiff is electing not to pursue statutory damages or actual damages under the Copyright Act and is only seeking equitable relief in the form of a permanent injunction with respect to its copyright infringement claim.

**IV.      CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion is

**GRANTED** against those Defendants listed in the attached Schedule "A."  Final Default Judgment

will be entered by separate order.

**DONE AND ORDERED** in Miami, Florida, this 28th day of June, 2023.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**